# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,                                **Criminal No. 14-119 (SRN/SER)**

v.

Zdenko Jakisa,                      **REPORT AND RECOMMENDATION**

        Defendant.

---

    Ann Marie Ursini, Esq., United States Department of Justice, Criminal Division, 1301 New York Avenue NW, Suite 200, Washington, District of Columbia 20530, for Plaintiff.

    Nathan P. Petterson, Esq., United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff.

    Reynaldo A. Aligada, Jr., Esq., Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant.

    Theresa M. Bevilacqua, Esq., Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

    The above-captioned case comes before the undersigned on Defendant Zdenko Jakisa's ("Jakisa") Motion to Dismiss Indictment of Time Barred Claims and for Pre-Indictment Delay ("Motion to Dismiss") [Doc. No. 24]. This matter has been referred for the resolution of the issues raised in Jakisa's motion pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends granting Jakisa's Motion to Dismiss.

I.     **BACKGROUND**

On April 22, 2014, Jakisa was indicted on one count of "Possession of Unlawfully Obtained Documents" in violation of 18 U.S.C. § 1546(a). (Indictment) [Doc. No. 1 at 1]. The Indictment alleges that on or about April 17, 2014, Jakisa "did knowingly possess a document prescribed by statute and regulation as evidence of authorized stay and employment in the United States,"—namely, a permanent resident card or "green card"—which Jakisa "knew to have been procured by means of materially false claims and statements and otherwise unlawfully obtained, in that in response to oral and written questions during his refugee and legal permanent resident applications, [Jakisa] failed to reveal" certain information. (*Id.*). The information that the Government alleges Jakisa failed to reveal is as follows:

  a.    He was a member of the *Hrvatsko Vijeće Odbrane* ("HVO") (the armed forces of the Croatian Defense Council in Bosnia and Herzegovina ("Bosnia")) during the Bosnian Conflict;

  b.    He had been arrested, charged, indicted and imprisoned for breaking or violating the law in Bosnia; and

  c.    He had committed crimes of moral turpitude in Bosnia.

(*Id.* at 1–2).

On October 20, 2014, Jakisa filed his Motion to Dismiss, seeking dismissal of the Indictment on statute of limitations grounds and on grounds of pre-indictment delay. (Mot to Dismiss). A hearing on the Motion to Dismiss was held on October 31, 2014. (Minute Entry Dated Oct. 31, 2014) [Doc. No. 33]. Based on the parties' contentions during oral argument, the Court ordered the parties to submit supplemental briefing on several legal issues and to provide the Court with documentation regarding the Federal Bureau of Investigation's ("FBI") 2005 inquiry into Jakisa. (Order Dated November 4, 2014) [Doc. No. 34]. The parties have submitted

their supplemental briefs and have provided the Court with relevant documentation. Accordingly, Jakisa's Motion to Dismiss is now ripe for consideration.

## III. DISCUSSION

The parties agree that the offense alleged in the Indictment is subject to a general five-year statute of limitations established in 18 U.S.C. § 3282(a). (Mot. to Dismiss at 3); (Gov't's Supplemental Resp. Opposing Def.'s Mot. to Dismiss, "Gov't's Supplemental Resp.") [Doc. No. 37 at 1]. The parties also agree that the allegedly false statements at issue in the case were made, at the very latest, in 2001, when Jakisa applied for legal permanent resident ("LPR") status, and that the events that bear on whether the allegedly false statements are in fact false, are events that occurred sometime before January 1998, when Jakisa applied for refugee status. *See* (Mot. to Dismiss at 1, 4, 10); (Gov't's Resp. to Def.'s Mot. to Dismiss, "Gov't's Resp.") [Doc. No. 32 at 1–2]. The point of disagreement, and the question before the Court, is when the five-year limitations period begins to run for the offense of possession of an immigration document known to have been procured by false statements. *See, e.g.*, (Mot. to Dismiss at 4); (Gov't's Resp. at 3–5).

Jakisa contends that the conduct at issue in the Indictment "occurred no later than 2002," when Jakisa was issued his green card, and that the Indictment is therefore time-barred under the five-year limitations period set forth in 18 U.S.C. § 3282(a). *See* (Mot. to Dismiss at 4). Jakisa's position is based on his argument that a violation of 18 U.S.C. § 1546(a) for possession of an immigration document known to have been procured by false statements is not a "continuing offense" for which the statute of limitations would not begin to run until possession ends. (Mot. to Dismiss at 4–9). Specifically, Jakisa asserts that "extending the already disfavored doctrine of 'continuing offenses' to toll the statute of limitations is not supported by the text of . . . 18 U.S.C.

3

§ 1546(a), similar immigration related statutes, or Supreme Court precedent." (Mot. to Dismiss at 5).[1]

The Government contends that possession of an immigration document known to have been procured by false statements is a continuing offense, so that the statute of limitations begins to run only when possession ends, "including by government seizure." (Gov't's Supplemental Resp. at 2–5). In support of its position, the Government argues that because Jakisa was "appropriately charged with a possessory offense," Jakisa's argument that the Indictment is time-barred must be rejected. (Gov't's Resp. at 3–5).

---

[1] In his supplemental briefing, Jakisa contends that the statute of limitations ran "no later than 2005," when, according to Jakisa, the Government was on notice of the alleged offense based on an FBI investigation related to Jakisa's past in Bosnia. (Def.'s Supplemental Mem. in Supp. of Mot. to Dismiss Indictment of Time-Barred Claims and for Pre-Indictment Delay "Jakisa's Supplemental Mem.") [Doc. No 36 at 1]. Jakisa's arguments in this regard are unpersuasive. Jakisa asks the Court to use a civil "discovery rule" and hold that the "statute of limitations accrued in 2005" when the Government "had enough facts to be on notice of the alleged immigration violation." (*Id.* at 5–9). In support of his argument, Jakisa relies in large part on civil RICO cases and civil securities fraud cases. See (*id.* at 8–9). These cases, which address the use of the discovery rule in its traditional context, do not support the importation of a civil discovery rule into federal criminal statutes. See *Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1221 (2013) (noting that the discovery rule "arose in 18th-century fraud cases as an 'exception' to the standard rule" and was created to protect defrauded victims). Indeed, in one case cited by Jakisa, the Supreme Court expressly noted the different standards that apply to statutes of limitation in civil and criminal RICO cases. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188 (1997).

The criminal cases cited by Jakisa in support of his argument for a discovery rule are also distinguishable. Specifically, Jakisa relies on *United States v. Gomez*, 38 F.3d 1031 (8th Cir. 1994), and opinions from other circuit courts of appeals and district courts that address illegal reentry offenses under 18 U.S.C. § 1326. (Jakisa's Supplemental Mem. at 5–7). *Gomez*, however, relied on a discovery rule only in interpreting language of § 1326, making it illegal to be "found in" the United States after being deported. See 38 F.3d at 1037. Section 1326 is not at issue in this case, no such "found in" language exists in the statute at issue here, and *Gomez* does not support the broad importation of a civil discovery rule into criminal statutes. Indeed, the importation of a civil discovery rule of accrual would contradict Congress's determination reflected in 18 U.S.C. § 3282(a)—the statute of limitations provision which undisputedly applies in this case—that unless "otherwise expressly provided by law" the statute of limitations begins to run when an offense is **committed**.

4

For the reasons explained below, the Court concludes that possession of an immigration document known to have been procured by false statements as prohibited by § 1546(a) is not a continuing offense, and that as result, the statute of limitations begins to run when the defendant first possesses the procured immigration document.

### A. Legal Standard

In general, the statute of limitations for a criminal offense begins to run when the crime is complete. *Toussie v. United States*, 397 U.S. 112, 115 (1970). A crime is complete when each element of the offense has occurred. *See id.*; *United States v. Gonzalez*, 495 F.3d 577, 580 (8th Cir. 2007). The continuing offense doctrine, however, modifies this general rule and provides that if an offense is continuing, "the statute of limitations does not begin to run when all elements are first present, but rather begins when the offense expires"—that is, when the prohibited conduct comes to an end. *Gonzalez*, 495 F.3d at 580 (internal quotation marks omitted). An offense is a continuing offense if "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115.

When determining whether a crime is a continuing offense, the Court must be guided by the principle that the "purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Id.* at 114. Statutes of limitation are "designed to protect individuals from having to defend themselves against charges when basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id.* at 114–15. Such limitations "may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected

criminal activity." *Id.* at 115. In light of these principles, the Supreme Court has stated that "criminal limitations statutes are to be liberally interpreted in favor of repose" and that "the doctrine of continuing offenses should be applied in only limited circumstances." *Id.*; *see also United States v. DiSantillo*, 615 F.2d 128, 134 (3rd Cir. 1980) ("*Toussie* indicates the disfavor with which the federal judiciary must regard assertions that a crime is a continuing offense . . . .").

### B.     Analysis

#### 1.     Applying the *Toussie* Framework

Section 1546(a) states that

> [w]hoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . .

is subject to fines and imprisonment. As noted above, the Indictment in this case alleges that Jakisa violated § 1546(a) by possessing a green card that Jakisa "knew to have been procured by means of materially false claims and statements and otherwise unlawfully obtained, in that in response to oral and written questions during his refugee and legal permanent resident applications, [Jakisa] failed to reveal" certain information. (Indictment at 1). The Ninth Circuit noted that § 1546(a) "is certainly not a model of good draftsmanship; a better description would be that it is a masterpiece of obfuscation." *United States v. Krstic*, 558 F.3d 1010, 1013 (9th Cir. 2009) (internal quotations marks omitted).

While § 1546(a) is not a model of clarity, the parties do not dispute that § 1546(a) does not come within the first *Toussie* prong, which states that an offense may be deemed a continuing offense if "the explicit language of the substantive criminal statute compels such a conclusion." 397 U.S. at 115. That is, the Government does not contend that § 1546(a) contains explicit language that compels the conclusion that the offense at issue is a continuing offense, and a review of the statutory language reveals the absence of such language. *Compare* 18 U.S.C. § 1546(a) *with* 22 U.S.C. § 618(e) ("Failure to file [a registration statement as an agent of a foreign principal] or supplements thereto . . . shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitation or other statute to the contrary."); *see* (Gov't's Resp. at 5) (discussing the "gravamen of the charge," an analysis associated with the second *Toussie* prong); (Gov't's Supplemental Resp. at 2–3); (Gov't's Reply to Def.'s Supplemental Mem. in Supp. of its Mot. to Dismiss, "Gov't's Reply") [Doc. No. 44 at 2–3]; *see also Krstic*, 558 F.3d at 1018 (applying second *Toussie* prong to § 1546(a)); *United States v. Berndt*, 530 F.3d 553, 555 (7th Cir. 2008) (applying second *Toussie* prong when "the statute under which [the defendant] was prosecuted [did] not expressly state that possession of unregistered firearms is a continuing offense"); *United States v. Del Percio*, 870 F.2d 1090, 1095–96 (6th Cir. 1989) ("Since Congress has not included such explicit continuing offense language in the statutory provisions under which the defendants are charged, we conclude that the first prong of the *Toussie* test is not satisfied."); *United States v. Cunningham*, 902 F. Supp. 166, 168 (N.D. Ill. 1995) (concluding that "the first prong of *Toussie* [was] not met" when statute criminalizing possession of stolen mail did not "expressly provide that the proscribed conduct is a continuing offense").

The parties dispute the application of the second *Toussie* prong, providing that an offense is a continuing offense if "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115. In support of its argument, the Government relies heavily, if not exclusively, on its view that possession of an immigration document known to have been procured by false statements is simply a "contraband-in-possession" offense and that, as a result, it must be deemed a continuing offense. (Gov't's Resp. at 3–5); (Gov't's Supplemental Resp. at 3–4); (Gov't's Reply at 2–5).

The Court acknowledges that many courts have stated generally in the context of contraband-in-possession issues that possession is a continuing offense. *See, e.g.*, *United States v. Smith*, 266 F.3d 902, 904 (8th Cir. 2001); *United States v. Blizzard*, 27 F.3d 100, 102 (4th Cir. 1994); *United States v. Kayfez*, 957 F.2d 677, 678 (9th Cir. 1992). The contraband at issue in those cases is unlike the contraband here. In the context of possession of an **authentic** immigration document known to have been procured by false statements, the immigration document is **only contraband because of the false statements**.[2] That is, the "gravamen of the offense . . . is not simply possession . . . , although that is required, but the failure to disclose" information or the making of an affirmative representation that constitutes a false statement. *See Blizzard*, 27 F.3d at 103 (distinguishing concealment of stolen government property, which the court deemed a continuing offense, from concealment of assets by a bankrupt, which was held not to be a continuing a offense, and noting that "a bankrupt is required to disclose his assets; his

---

[2]   The use of the term authentic in this context refers to the fact that at issue in this case is § 1546(a)'s prohibition of possession of a document sought through proper channels and issued by the U.S. government when one knows the document was procured by false statements. That is, § 1546(a) "does not require proof of an already forged, counterfeited, altered, or falsely made immigration document." *Krstic*, 558 F3d. at 1017.

failure to do so is not unlike a false statement under oath");[3] *see also Del Percio*, 870 F.2d at 1096–98 (rejecting government's argument that offenses involving "possession and use" were continuing when defendants' possession "became unlawful only upon their alleged failure to comply" with relevant regulations and when the regulations "provid[ed] the substantive bases for the charged offense and defin[ed] the 'nature' of those offenses").

Fundamentally, the "contraband" of an authentic immigration document known to have been procured by false statements is different from items such as illegal drugs, illegal weapons, or counterfeit items that are contraband inherently. *See, e.g.*, *United States v. Maxim*, 55 F.3d 394, 396–98 (8th Cir. 1995) (involving violation of 18 U.S.C. § 922(o) which makes it "unlawful for any person to transfer or possess a machinegun"); *Kayfez*, 957 F.2d at 678–79 (involving possession of counterfeit notes). Likewise, an immigration document known to have been procured by false statements is distinct from other forms of contraband that are treated as contraband based on the status of the person who possesses the item, the status of the item in possession, or based on otherwise discrete circumstances. *See, e.g.*, *Berndt*, 530 F.3d at 554–55 (involving possession of unregistered pipe bombs); *Maxim*, 55 F.3d at 396–98 (involving a felon in possession offense); *Blizzard*, 27 F.3d at 102–03 (involving concealing and retaining stolen government property); *United States v. Chung*, 633 F. Supp. 2d 1134, 1146 n.12 (C.D. Cal. 2009) (involving possession of trade secrets); *Cunningham*, 902 F. Supp. at 167–69 (involving possession of stolen mail). Moreover, in sharp contrast to any of the contraband at issue in the

---

[3] The Court notes that concealment of assets by a bankrupt is now treated, to some extent, as a continuing offense. *See* 18 U.S.C. § 3284 ("The concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, and the period of limitations shall not begin to run until such final discharge or denial of discharge."). The fact that Congress ultimately took steps to explicitly designate this offense as continuing does not undermine the above analysis, which is relied on for its discussion of the **nature** of the offense.

above-cited cases, the item deemed contraband in this case was issued by the government after Jakisa sought admission to the United States through proper channels. Upon consideration, no meaningful similarity exists between the instant offense and the possessory offenses the Government relies on for comparison to show that the instant offense is continuing. The different nature of the contraband at issue here warrants different treatment of the offense for the purposes of the continuing offense doctrine. *Cf. Blizzard*, 27 F.3d at 102 (finding "no reason to treat differently a person who continues to conceal and retain stolen government property" and a person who "continues to possess unlawful drugs"); *see also Del Percio*, 870 F.2d at 1096–98 (declining to treat possessory offense as continuing when offense was distinguishable from "the simple and continuous act of possessing a contraband item").

In addition, to defend against the charge of possession of an immigration document known to have been procured by false statements on the merits, a defendant must contend that the statement made was not false or that the defendant did not have knowledge that the immigration document was procured by a false statement. *See* § 1546(a). In order to mount this defense, a defendant will necessarily have to address facts and circumstances that precede the making of the allegedly false statement. For example, if the Government seeks to prove, as part of its case against Jakisa, that Jakisa was charged with a crime that he failed to disclose on his application for LPR status, the Government must prove that Jakisa was in fact charged with a crime and that Jakisa knew that his statement indicating he had not been charged with a crime was false. *See* § 1546(a) (making it unlawful to "possess[] . . . [an immigration document] knowing it to . . . have been procured by means of any false claim or statement"); *Krstic*, 558 F.3d at 1017 (stating that § 1546(a) "prohibits possessing an otherwise authentic document that one knows has been procured by means of a false claim or statement").

As a result, a defendant alleged to have possessed an immigration document known to have been procured by a false statement does not, in any real sense, defend against the conduct related to any alleged continued possession of the immigration document, but instead must defend against the government's allegations related to the falsity of his earlier statements and his knowledge of their alleged falsity. *See* § 1546(a). This creates great risk that a defendant will be prosecuted for actions that occurred in "the far-distant past." *Cf. Blizzard*, 27 F.3d at 102 (reasoning that a defendant charged with the concealment of stolen government property is "not subjected to prosecution for acts in the far-distant past"); *see also DiSantillo*, 615 F.2d at 136 (stating that prosecution "initiated nine years after reentry and based on events that occurred seventeen years previously when the defendant was only sixteen years old" was "a paradigm case for invocation of the statute of limitations").

The Court notes that in *Krstic*, the Ninth Circuit concluded that a violation of § 1546(a) for possession of an immigration document known to have been procured by false statements is a continuing offense, and that several other district courts have reached the same conclusion. 558 F.3d at 1017–18; *United States v. Cvijanovic*, No. 10-CR-280, 2011 WL 1498599 (E.D. Wis. Feb. 8, 2011); *United States v. Vaghari*, Crim. Action No. 08-693-01-02, 2009 WL 2245097 (E.D. Pa. July 27, 2009).[4]

While acknowledging this contrary authority, the Court finds *Krstic* unpersuasive.[5] *Krstic* relies on the conclusory assertion that the offense at issue is contraband-in-possession offense,

---

[4] The discussion that follows addresses the *Krstic* case and the *Cvijanovic* case in more detail. The Court does not separately discuss the *Vaghari* case, as the reasoning therein is fundamentally the same as the reasoning articulated in *Krstic*. *See Krstic*, 558 F.3d at 1017–18; *Vaghari*, 2009 WL 2245097, at *6.

[5] The Court also acknowledges that some courts have concluded that an offense is continuing based on the criminalization of a possessory act alongside the criminalization of a related but more discrete act, reasoning that if Congress intended to criminalize only the discrete

rather than a false statement offense. *Krstic*, 558 F.3d at 1017. For the reasons discussed above, the Court concludes that this characterization of the offense ignores other important aspects of the offense that distinguish it from a typical contraband-in-possession offense. Thus, although the *Krstic* court noted that the "prohibited item" is an immigration document "that was procured by means of a false claim or statement," the court did not expressly consider whether the nature of the prohibited item itself and the very **reason** it is treated as a prohibited item warrants a different conclusion regarding the continuing nature of the offense. *See id.* at 1018. For the reasons discussed above, the offense at issue in this case does not fall neatly within the contraband-in-possession analysis advocated for by the Government and relied on in *Krstic*.

In *Cvijanovic*, the court reached the same conclusion as the *Krstic* court. 2011 WL 1498599, at *2. The Court also finds the *Cvijanovic* court's reasoning unpersuasive. First, the court made conclusory statements that, like the reasoning in *Krstic*, ignore the distinct nature of

---

act of taking possession, as opposed to the act of continuing possession, it would not have also criminalized a discrete act of dominion such as receipt. *See, e.g.*, *United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir. 1976) (discussing felon in possession of firearms offense in determining whether defendant could be charged with separate offenses rather than one offense involving a continuing course of conduct); *see also Cunningham*, 902 F. Supp. at 168. The Government has not advanced such an argument here, and the Court has not independently found binding authority that applies *Toussie* and that requires the use of such an analysis in this case. The Court has nonetheless considered this approach but finds it unpersuasive, as it fails to fully examine the "nature of the crime involved," as the Court has done here, in order to determine what Congress must have "assuredly . . . intended" and fails to account for *Toussie's* admonition that the doctrine of continuing offenses is to be applied in only limited circumstances. *See Toussie*, 397 U.S. at 115; *see also United States v. Bailey*, 444 U.S. 394, 413 (1980) (determining that offense of escape from federal custody was continuing offense under the second *Toussie* prong based on the **nature** of the offense—namely, the fact that an escaped prisoner poses a "continuing threat to society"); *Krstic*, 558 F.3d at 1017–18 (discussing essence of the offense when applying second *Toussie* prong to § 1546(a)); *Berndt*, 530 F.3d at 555 (discussing the "very nature of possession of pipe bombs" offense); *Blizzard*, 27 F.3d at 102 (discussing nature of the offense of concealing and retaining stolen government property and analogizing the offense to drug possession offenses).

the offense of possession of an immigration document known to have been procured by false statements. *See id.*; *see also supra*.

The *Cvijanovic* court also looked to a different portion of § 1546(a) to support its conclusion that Congress must have intended possession of an immigration document known to have been procured by false statements to be a continuing offense. *Cvijanovic*, 2011 WL 1498599, at *2. The court noted that an individual may violate the fourth paragraph § 1546(a) by "mak[ing] a false statement with respect to a material fact on an immigration document." *Id.* (citing § 1546(a) at paragraph 4).[6] On this basis, the court reasoned that "[b]y explicitly criminalizing not merely the making of a false statement on an immigration forms [sic], but also the possession of immigration documents obtained as a result of those false statements, it is clear that Congress intended to create a continuing offense." *Id.*

This reasoning ignores the fact that even if possession of an immigration document known to have been procured by false statements is not a continuing offense, the offense of making a false statement in an immigration form and possession of an immigration document known to have been procured by false statements remain distinct offenses that criminalize different conduct. Specifically, the crime of making a false statement in an immigration document is complete when an individual makes the false statement under oath or subscribes the false statement as true under penalty of perjury "**in** any application, affidavit, or other document required by the immigration laws or regulations" or presents such "application, affidavit, or other document which **contains**" the false statement. *See* § 1546(a) at paragraph 4 (emphasis added).

---

[6] Section 1546(a) contains several paragraphs defining a range of criminal offenses. These distinct offenses are divided only through the use of separate paragraphs, rather than through the use of separate subdivisions. The Court, therefore, refers to the distinct paragraphs within § 1546(a) when necessary.

By its terms then, this provision creates criminal liability based on the making of the false statement in a document or the presentation of the document containing the false statement. *See id.* at paragraph 1. This is distinct from the crime of possession of an immigration document known to have been **procured** by false statements, which further criminalizes the possession of an immigration document—such as a green card—which is later issued based on the application, affidavit, or other document in which the false statement was made. *See id.* This expansion of criminal liability effectuated by the first paragraph of § 1546(a), under which Jakisa is charged, remains intact even if the statute of limitations for possession of an immigration document known to have been procured by false statements begins to run when possession first occurs.

The view propounded by the Government and adopted by the *Krstic* and *Cvijanovic* courts treats all contraband-in-possession offense as one and the same. This is a view that the Court cannot adopt in light of the unique nature of the prohibited item at issue when the government alleges that a defendant possessed an authentic immigration document known to have been procured by false statements. The Court cannot conclude, given the nature of the offense, and construing the statute in favor of repose as the law requires, that Congress assuredly intended the offense to be a continuing one.

The Government contends that if the Court does not conclude that the statute of limitations in this case "can run indefinitely," the Court's holding would "constructively legalize the possession of an illegal item, such as drugs, endangered species, or unregistered firearms in those cases in which the government did not immediately learn of or act on the possession of the contraband." (Gov't's Reply at 5). This contention overstates the scope of the Court's recommendation in this case and misunderstands the nature and purpose of statutes of limitation.

First, the Court concludes only that the offense of possession of an immigration document known to have been procured by means of a false statement as prohibited by § 1546(a) is not a continuing offense and that the statute of limitations therefore begins to run when the crime is complete—that is, when the defendant first possesses the immigration document known to have been procured by fraud. In so holding, the Court does not cast off or undermine those cases that treat possession of "illegal item[s]" as continuing, and these cases are distinguishable on the grounds previously discussed. *See supra*. Moreover, to the extent the Government contends that the Court should decline to reach the result it reaches here because it would limit the government's ability to prosecute offenses when the government does not "immediately learn of or act on" knowledge of the offense, the Government's argument is unpersuasive: Statutes of limitation necessarily result in the government's inability to prosecute some defendants for some conduct, even when that conduct clearly constitutes a criminal offense. *See Toussie*, 397 U.S. at 123 ("Every statute of limitations, of course, may permit a rogue to escape . . . .") (citation and internal quotations marks omitted). Indeed, they are designed to "limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions" and necessarily reflect a balancing of the government's interest in prosecuting criminal conduct and a defendant's and society's interest in repose. *See id.* at 114–15.[7]

### 2. Conclusion

In light of the above analysis, the Indictment in this case is untimely. The Indictment was filed on April 22, 2014. (Indictment at 1). The Indictment does not allege that Jakisa first

---

[7] The Court also notes that Congress has provided a tool for the government to toll the statute of limitations when the government seeks to secure evidence in a foreign country, a provision which may be of particular importance in immigration fraud cases. 18 U.S.C. § 3292. It does not appear that the Government ever sought the benefit of this statute in this case.

possessed an immigration document known to have been procured by false statements within the five-year time period preceding April 22, 2014. *See* (*id.*). The Court therefore recommends that Jakisa's Motion to Dismiss be granted and that the Indictment be dismissed.

Jakisa also seeks dismissal of the Indictment on the ground of pre-indictment delay in violation of his right to due process. (Mot. to Dismiss at 9–12). Because the Court recommends dismissal of the Indictment on statute of limitations grounds, however, the Court declines to address Jakisa's constitutional basis for dismissal. *See United States v. Thomas*, 20 F.3d 817, 820–21 (8th Cir. 1994) (proceeding to address defendant's constitutional argument only after determining that it was necessary to do so, and noting that before "'reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision'" (quoting *Jean v. Nelson*, 472 U.S. 846, 854 (1985)); *United States v. Ratcliff*, 381 F. Supp. 2d 537, 552 (M.D. La. 2005) (declining to address constitutional basis for dismissal of counts in indictment when court had already dismissed those counts on non-constitutional grounds and noting that it is "well-established that it is improper to reach a constitutional issue if a case can be disposed of on other, non-constitutional grounds").

IV.   **RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Zdenko Jakisa's Motion to Dismiss Indictment of Time Barred Claims and for Pre-Indictment Delay [Doc. No. 24] be **GRANTED** and the Indictment be dismissed.

Dated: December 30, 2014

>                                              *s/Steven E. Rau*
>                                              Steven E. Rau
>                                              United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **January 13, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.