# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,                                 **Criminal No. 14-119 (SRN/SER)**

v.

Zdenko Jakisa,                    **REPORT AND RECOMMENDATION**

      Defendant.

---

Ann Marie Ursini, Esq., United States Department of Justice, Criminal Division, 1301 New York Avenue NW, Suite 200, Washington, District of Columbia 20530, for Plaintiff.

Nathan P. Petterson, Esq., United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff.

Reynaldo A. Aligada, Jr., Esq., Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant.

Theresa M. Bevilacqua, Esq., Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendant Zdenko Jakisa's ("Jakisa") Motion to Dismiss Indictment of Time Barred Claims and for Pre-Indictment Delay ("Motion to Dismiss") [Doc. No. 24]. This matter has been referred for the resolution of the issues raised in Jakisa's motion pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends denying without prejudice Jakisa's Motion to Dismiss with respect to Jakisa's allegations of preindictment delay.

**I.     BACKGROUND**

On April 22, 2014, Jakisa was indicted on one count of "Possession of Unlawfully Obtained Documents" in violation of 18 U.S.C. § 1546(a). (Indictment) [Doc. No. 1 at 1]. The Indictment alleges that on or about April 17, 2014, Jakisa "did knowingly possess a document prescribed by statute and regulation as evidence of authorized stay and employment in the United States,"—namely, a permanent resident card or "green card"—which Jakisa "knew to have been procured by means of materially false claims and statements and otherwise unlawfully obtained, in that in response to oral and written questions during his refugee and legal permanent resident applications, [Jakisa] failed to reveal" certain information. (*Id.*). The information that the Government alleges Jakisa failed to reveal is as follows:

    a.    He was a member of the *Hrvatsko Vijeće Odbrane* ("HVO") (the armed forces of the Croatian Defense Council in Bosnia and Herzegovina ("Bosnia")) during the Bosnian Conflict;

    b.    He had been arrested, charged, indicted and imprisoned for breaking or violating the law in Bosnia; and

    c.    He had committed crimes of moral turpitude in Bosnia.

(*Id.* at 1–2).

On October 20, 2014, Jakisa filed his Motion to Dismiss, seeking dismissal of the Indictment on statute of limitations grounds and on grounds of preindictment delay. (Mot. to Dismiss). A hearing on the Motion to Dismiss was held on October 31, 2014. (Minute Entry Dated Oct. 31, 2014) [Doc. No. 33]. Based on the parties' contentions during oral argument, the Court ordered the parties to submit supplemental briefing on several legal issues and to provide the Court with documentation regarding the Federal Bureau of Investigation's 2005 inquiry into Jakisa. (Order Dated Nov. 4, 2014) [Doc. No. 34].

On December 30, 2014, this Court recommended that the Motion to Dismiss be granted and the Indictment be dismissed on statute of limitations grounds. (Report and Recommendation Dated Dec. 30, 2014) [Doc. No. 46]. Because the Court recommended dismissal of the Indictment as untimely, the Court did not address Jakisa's constitutional preindictment delay argument. (*Id.* at 16). The Honorable Susan Richard Nelson declined to adopt the Report and Recommendation, and remanded the matter for consideration of Jakisa's allegations of preindictment delay. (Mem. Opinion and Order Dated Feb. 9, 2015, "Feb. 9 Order") [Doc. No. 49].

### III. DISCUSSION

The issue presently before the Court is whether Jakisa is entitled to dismissal of the Indictment on the ground that the alleged preindictment delay in this case violates his right to due process of law under the Fifth Amendment. "[W]hile statutes of limitations provide the primary guarantee against delay prior to indictment or arrest, the due process clause of the Fifth Amendment does play a limited role in protecting against oppressive delay." *United States v. Jackson*, 446 F.3d 847, 849 (8th Cir. 2006).[1]

---

[1] In his Motion to Dismiss, Jakisa states that the Indictment should be dismissed "for pre-indictment delay in violation of [his] right to Due Process pursuant to the Fifth Amendment and right to a Speedy trial pursuant to the Sixth Amendment of the United States Constitution." (Mot to Dismiss at 1). "[T]he Sixth Amendment provides a right to a speedy trial in all criminal prosecutions," but this right attaches at the time of arrest or indictment, whichever is earlier. *Jackson*, 446 F.3d at 849. Unlike the due process clause of the Fifth Amendment, "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused.'" *United States v. Marion*, 404 U.S. 307, 313, 321 (1971) (declining to "extend th[e] reach of the [Sixth] [A]mendment to the period prior to arrest"). At oral argument on the Motion to Dismiss and in all briefing on the Motion to Dismiss, Jakisa addressed only the delay occurring before his indictment. *See id.* The delay at issue is therefore preindictment delay to which the Fifth Amendment applies, rather than any delay that came after Jakisa's indictment or arrest and that would therefore be the proper focus of a Sixth Amendment inquiry. *See id.* at 321–24. As a result, the Court only considers Jakisa's claim under the Fifth Amendment framework. To the extent Jakisa relies on legal principles relevant in a Sixth Amendment

The parties agree that Jakisa's claim of preindictment delay implicates the Due Process Clause of the Fifth Amendment, but disagree, in part, as to the appropriate analysis that this Court must undertake. The parties concur that the Court must begin with an analysis of whether the delay has caused Jakisa actual and substantial prejudice and that Jakisa bears the burden to establish such prejudice. *See* (Mot. to Dismiss at 9) ("A defendant who seeks dismissal of charges based on pre-indictment delay bears the initial burden of raising [a] specific, concrete and supported showing of actual and substantial prejudice."); (Gov't's Resp. to Mot. to Dismiss, "Gov't's Resp.") [Doc. No. 32 at 6]; *see also* (Def.'s Supplemental Mem. in Supp. of Mot. to Dismiss, "Jakisa's Supplemental Mem.") [Doc. No. 36 at 11]; (Def.'s Reply Mem. in Supp. of Mot. to Dismiss, "Jakisa's Reply") [Doc. No. 45 at 5]; (Gov't's Supplemental Resp. Opposing Def.'s Mot. to Dismiss, "Gov't's Supplemental Resp.") [Doc. No. 37 at 5]; (Gov't's Reply to Def.'s Supplemental Mem. in Supp. of Mot. to Dismiss, "Gov't's Reply") [Doc. No. 44 at 5]. Nevertheless, the parties disagree as to the analysis to be conducted following a showing of actual and substantial prejudice.[2] *See, e.g.*, (Jakisa's Reply at 5–6); (Gov't's Reply at 5–7). The Court first addresses the parties' arguments regarding prejudice. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The actual and substantial prejudice issue is ordinarily considered first, and the defendant's failure of proof on that issue is a sufficient ground on which to deny a motion to dismiss.").

---

analysis to support his claim under the Fifth Amendment, the Court will address such arguments below.

[2] *See infra* note 12, discussing the parties' positions regarding the analysis to be conducted following a defendant's showing of prejudice.

4

### A. Prejudice

#### 1. Legal Standard

"'To show preindictment delay violated the Due Process Clause, a defendant must first show the delay actually and substantially prejudiced the defendant.'" *Id.* at 1232 (quoting *United States v. McDougal*, 133 F.3d 1110, 1113 (8th Cir. 1998)); *see also United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986) ("The defendant bears the burden of proving actual prejudice flowing from the pre-indictment delay.").

> To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government. Speculative or conclusory claims alleging "possible" prejudice as a result of the passage of time are insufficient. The defendant also must relate the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense. Finally, the defendant must show that the missing testimony or information is not available through substitute sources.

*Bartlett*, 794 F.2d at 1289–90 (citations omitted). "The Court will inquire into the reasons for the delay only where actual prejudice has been established." *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000); *see also United States v. Jacobsen*, Criminal No. 06-308 (1) (RHK/SRN), 2007 WL 172366, at *2 (D. Minn. Jan. 22, 2007). In addition, "[i]t is well-established in this circuit that, in this due process inquiry, an assessment of the nature and degree of the prejudice resulting from the missing evidence must be made in light of the overall strength of the government's case." *Benshop*, 138 F.3d at 1234.

#### 2. Analysis

At the outset, the Court notes that because the offense for which Jakisa is indicted is a continuing offense, the unlawful conduct alleged is "the ongoing conduct of possessing" an immigration document known to have been obtained unlawfully; an offense that "is not complete

5

when it first occurs." (Feb. 9 Order at 5, 7). As a result, it would seem that the offense ended on April 17, 2014, when law enforcement seized Jakisa's green card, thereby ending his ongoing possession. *See* (Gov't's Resp. at 2–3) (stating that Jakisa's green card was "seized from his residence during the execution of a search warrant on April 17, 2014"). Arguably then, if the offense continued until April 17, 2014, and Jakisa was indicted on April 22, 2014, the actual period of preindictment delay was a mere five days. *See United States v. Reed*, 647 F.2d 849, 852 (8th Cir. 1981) ("Under *Marion*[,] the delay subject to due process scrutiny is preindictment or preaccusation delay, 'the passage of time between **the crime and arrest or charge**.'" (emphasis added) (quoting *Marion*, 404 U.S. at 322)); *United States v. George*, No. CR11-213Z, 2011 WL 4559122, at *3 (W.D. Wash. 2011) ("Because Counts 1 and 5 charge continuing offenses, defendants' assertion of a 20–year delay is inaccurate, and their contention that pre-indictment delay warrants dismissal is wholly lacking in merit.").[3] The parties have not addressed this issue, and so the Court finds it inappropriate to summarily deem Jakisa's claim of preindictment delay "wholly lacking in merit" on this basis. *Cf. George*, 2011 WL 4559122, at *3. Instead, the Court will evaluate Jakisa's allegations of prejudice.

Jakisa contends that he has demonstrated actual and substantial prejudice based on inherent prejudice due to the passage of time, the loss of witness testimony, and the loss of the firearm believed to have been used in a the murder of Nevenka Elezovic ("Elezovic").[4] (Mot. to

---

[3] *See also United States v. Lovasco*, 431 U.S. 783, 784 (1977) (discussing preindictment delay between the dates the offenses occurred and the filing of the indictment); *Marion*, 404 U.S. at 325 (discussing preindictment delay between "the end of the scheme charged in the indictment and the date the defendants were indicted"); *United States v. Brock*, 782 F.2d 1442, 1445 (7th Cir. 1986) ("With respect to the conspiracy count, therefore, there was no pre-indictment delay **from the completion of the offense** to the date of the indictment because the offense may be considered to have continued up to the date of the indictment." (emphasis added)).

[4] As part of the Government's efforts to prove that Jakisa possessed an immigration document known to have been obtained unlawfully, Jakisa "anticipates that the government will

Dismiss at 11–12); (Jakisa's Supplemental Mem. at 12); (Jakisa's Reply at 5). For the reasons stated, the Court concludes that the circumstances Jakisa complains of do not constitute the actual and substantial prejudice required for dismissal of the Indictment on Fifth Amendment grounds.

### a. Jakisa's Specific Allegations of Prejudice

#### i. Prejudice Based on Passage of Time

The Court first considers Jakisa's argument that he has demonstrated prejudice based on the passage of time. Jakisa contends that "[b]ecause preparation for trial involves defense investigation in a foreign country—and reconstructing events that happened over twenty years ago—[Jakisa] is at an extreme disadvantage and prejudiced by the glacial pace of the government's investigation and eventual indictment." (Mot. to Dismiss at 11). Similarly, Jakisa alleges "[e]ven absent . . . specific witnesses and evidence" that are no longer available, he is "inherently prejudiced by the fact that the underlying conduct which the government is setting out to prove occurred more than 21 years ago in a foreign country." (*Id.* at 12). Jakisa states that this case involves "precisely the type of delay courts must recognize as inherently prejudicial and violative of the Sixth Amendment right to a speedy trial and due process." (*Id.*) (citing *Doggett v. United States*, 505 U.S. 647, 655 (1982)); *see also* (*id.* at 9–10) (discussing *Doggett*).

As noted above, Jakisa discusses only the delay that preceded his indictment and arrest. *See supra* n.1; *see also* (Mot. to Dismiss at 11–12). At that point in time, Jakisa's Sixth Amendment rights had not attached and are therefore simply not implicated by the delay that Jakisa complains of. *See Marion*, 404 U.S. at 314 (stating that the "Sixth Amendment speedy

---

attempt to prove that [Jakisa] committed a murder in September 1993 in a town in what is now Bosnia and Herzegovina" and failed to disclose this conduct when seeking refugee and legal permanent resident status. *See* (Mot. to Dismiss at 11). This murder appears to be the murder of Elezovic. *See* (Gov't's Resp. at 1, 7, 9); *see also* (Tr. of Mot. Hr'g, "Tr.") [Doc. No. 51 at 17].

7

trial provision has no application until the putative defendant in some way becomes an 'accused.'"). To the extent Jakisa contends that, based on the inherent prejudice that may come with the passage of time, he has demonstrated actual and substantial prejudice in support of his Fifth Amendment due process claim, Eighth Circuit precedent forecloses this argument.

Like Jakisa, the defendant in *United States v. Jackson* relied on *Doggett* "for the proposition that" he was "entitled to presumptive prejudice due to the length of delay in his case." 446 F.3d at 852 (internal quotations marks omitted). The Eighth Circuit rejected this argument, stating that "*Doggett* . . . dealt with the presumption of prejudice in cases of post-accusation delay, which implicate the Sixth Amendment speedy trial right, a presumption that is not recognized in the Fifth Amendment due process analysis applicable here." *Id.* (citations omitted). Just as in *Jackson*, Jakisa's attempt to rely on inherent, presumptive prejudice based on the mere passage of time, as opposed to a concrete showing of actual and substantial prejudice, is misplaced. *Id.* at 851–52; *see also Marion*, 404 U.S. at 325–26 (rejecting claim of prejudice for purposes of due process analysis when appellees relied "solely on the real possibility of prejudice inherent in any extended delay," as "these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial"); *United States v. Crouch*, 84 F.3d 1497, 1514–15 (5th Cir. 1996) (en banc) ("All our precedents, as well as a fair reading of *Marion* and *Lovasco*, plainly indicate that actual, not presumptive, prejudice must be shown where complaint is made of preindictment delay."); *Bartlett*, 794 F.2d at 1289–90 ("Speculative or conclusory claims alleging 'possible' prejudice as a result of the passage of time are insufficient.").[5]

---

[5] *Cf. United States v. Edwards*, 159 F.3d 1117, 1128 (8th Cir. 1998) (rejecting defendants' argument that *Doggett* required government to bear the burden to prove absence of prejudice when defendant asserts a due process claim based on preindictment delay because "*Doggett* involved a challenge to post-indictment delay under the Speedy Trial Clause of the Sixth

### ii. Prejudice Based on Loss of Witness Testimony

#### (a) Testimony of Officer

Jakisa's claims of prejudice related to the loss of witness testimony fail to demonstrate actual prejudice. Jakisa contends that one of the officers who responded to the scene of Elezovic's murder "is now suffering from significant mental health problems and may not be capable of providing competent testimony." (Mot. to Dismiss at 12). Jakisa's allegation of prejudice related to any loss of the officer's testimony is highly speculative.[6] The speculative nature of Jakisa's claim is evinced by Jakisa's argument, in which he generally asserts that the officer "**may not** be capable of providing competent testimony." (*Id.*) (emphasis added). In addition, even if the officer is incapable of providing competent testimony, Jakisa has failed to "relate" in any manner "the substance of the testimony which would be offered" by the officer if he were competent. *Bartlett*, 794 F.2d at 1290. As a result, the Court cannot determine the materiality of any such testimony to Jakisa's defense. *Id.*

Finally, whether the officer's testimony is available through the testimony of other responding officers or other witnesses is not addressed by Jakisa. Jakisa has therefore failed to meet his burden to "show that the missing testimony . . . is not available through substitute sources." *See id.* Indeed, the Government asserts that there were "multiple witnesses present at the crime scene, as set forth in reports and interviews produced by the Government." (Gov't's

---

Amendment. That Clause 'is wholly irrelevant' to a Due Process Clause challenge to a pre-indictment delay" (quoting *Lovasco*, 431 U.S. at 788)).

[6] The Court notes that Jakisa has offered no testimony, affidavit, or other evidence in support of his allegation of prejudice regarding the loss of the officer's testimony or in support of any other allegation of prejudice. *Cf. United States v. Sayers*, Crim. No. 12-235 (JNE/LIB), 2013 WL 627073, at *4 (D. Minn. Jan. 18, 2013) ("Based on the testimony of Emily Parkhurst, Defendant has identified the witness who is no longer available and **has introduced evidence to substantiate the testimony** that would have been offered by the missing witness if she were available to testify." (emphasis added)), *report and recommendation adopted by* 2013 WL 627069 (D. Minn. Feb. 20, 2013).

Resp. at 9); *see also* (Tr. at 31–32) (Government stating that based on "reports that have been disclosed to defense counsel[,] there were many police officers . . . who responded to [Jakisa's] home and to the scene, who investigated or at least initially responded to the call that they received after . . . Elezovic was killed"); (Mot. to Dismiss at 11–12) (suggesting that the officer alleged to be suffering from mental illness was not the only officer that responded to the Elezovic murder scene). Jakisa has not challenged this assertion, and Jakisa bears the burden of demonstrating that the officer's missing testimony is not available through other sources.[7] *Bartlett*, 794 F.2d at 1290.

### (b)   Testimony of MG

In order to establish prejudice, Jakisa also relies on the lost testimony of a now deceased individual identified as MG. (Mot. to Dismiss at 11–12). Like Jakisa's allegations regarding the officer's ability to testify, Jakisa's allegations regarding MG are speculative. Jakisa states that MG "**may have** been with . . . Jakisa prior to his arrest" related to Elezovic's murder, that "[a]t the least, MG was alleged to be at the scene of the murder and a **possible** eyewitness," and that it is "**possible** that [MG] committed the murder." (*Id.* at 11) (emphasis added). Once again, Jakisa articulates prejudice in a hypothetical manner. *See Bartlett*, 794 F.2d at 1291 ("Bartlett's allegations merely suggest that if the witness were alive today, it is possible he could provide materially exculpatory information. Allegations of this speculative nature clearly fail to demonstrate actual prejudice." (footnote omitted)).

---

[7]   The Government has not submitted reports or interviews detailing the number of other officers that responded to the scene of the Elezovic murder. These documents may be submitted at trial and may further inform the district court's inquiry into the question of prejudice, should Jakisa renew his motion to dismiss the indictment on preindictment delay grounds after trial. *See infra*.

Jakisa also alleges that "before his death, MG implicated himself in the murder." (Mot. to Dismiss at 11). While perhaps stated in more certain terms, this contention of prejudice with regard to MG remains speculative. Jakisa offers his general assertion that "MG implicated himself in the murder," but has failed to provide any detail regarding the manner or extent to which MG implicated himself. *See* (*id.*). It is unclear, for example, whether MG "implicated himself" by stating that he provided Jakisa with the weapon used to kill Elezovic or by stating that he, without Jakisa's aid or involvement, killed Elezovic. Thus, although Jakisa asserts that MG implicated himself in the Elezovic murder, this implication, standing alone, does not exculpate Jakisa clearly. Nor do Jakisa's general statements at the motion hearing that MG made "exculpatory statements in terms of involvement in the crime" aid Jakisa in this regard, as Jakisa again fails to offer any detail regarding the nature of MG's statements. (Tr. at 17). Without more information it is impossible for the Court to determine the significance of the testimony alleged to have been lost with MG's death. Because Jakisa failed to "relate the substance of the testimony which would be offered by the missing witness[] . . . in sufficient detail to permit a court to assess accurately whether the information is material to [his] defense," he has failed to establish actual prejudice resulting from MG's death. *Bartlett*, 794 F.2d at 1290; *see also United States v. Scoggins*, 992 F.2d 164, 167 (8th Cir. 1993) (rejecting appellant's preindictment delay claim where appellant "contend[ed] that a now dead witness could have established her innocence had there been less delay" in part because appellant failed to relate the substance of missing witness's testimony in sufficient detail).

The speculative nature of the prejudice posed by the loss of MG's testimony is further demonstrated by apparent inconsistencies in MG's own statements. The Government asserts that "during the Bosnian investigation, MG denied any involvement in or knowledge of the crime."

11

(Gov't's Supplemental Resp. at 9) (providing the Bates Numbers of documents containing MG's previous statements and stating that these statements were provided to defense counsel). The Government also asserts that other witnesses "did not place MG at the scene of" the Elezovic murder. (*Id.*). In light of these circumstances, the Government contends that "it is highly unlikely MG would have changed his testimony and claimed responsibility for the murder" and that, even if MG were to testify as Jakisa claims, his testimony would not have weakened the Government's case against Jakisa.[8] (*Id.*). In response to these assertions, Jakisa does not challenge the Government's assertions as to MG's prior statements or as to the statements of other witnesses who did not place MG at the murder scene. *See* (Jakisa's Reply at 5–6). Instead, Jakisa states that the Government's "attempts to play out how [MG's] testimony might have occurred at trial are unpersuasive when he is not alive to actually participate" in the trial. (*Id.* at 5). At best, Jakisa's response highlights the uncertainty as to the testimony MG may provide if he were alive today and, at worst, makes it "reasonable to conclude that [MG] would not have testified as [Jakisa] alleges." *See Benshop*, 138 F.3d at 1235 (finding it "reasonable to conclude" that deceased witness "would not have testified as defendant allege[d]" when the witness's "contemporary written statement" and the testimony of other witnesses at trial were contrary to defendant's assertions as to how the witness would testify).

In sum, Jakisa has failed to demonstrate actual and substantial prejudice based on the loss of witness testimony.

---

[8]  The potential effect of MG's lost testimony, even if MG would have implicated himself in some way in the Elezovic murder, as well as the effect of Jakisa's other claims of prejudice on the Government's overall case against Jakisa, is addressed *infra* in Part III.A.2.b.

### iii. Prejudice Based on Loss of Firearm

Jakisa's allegation of prejudice with regard to the loss of the firearm believed to have been used in the Elezovic murder is also speculative. Jakisa states that "although it is not clear at this point, investigative reports by the government suggest that the firearm police believe was used to commit the murder—which was allegedly seized and subjected to ballistics tests in connection with [a] Bosnian criminal court case in the late 1990s—has not been located." (Mot. to Dismiss at 12). The Government states that the firearm belonged to Jakisa and that the firearm was seized in Bosnia and subjected to forensic examination in Croatia in 1995. (Gov't's Resp. at 9); (Tr. at 32). The results of the forensic examination "tend to show a link between the weapon and the death of . . . Elezovic." (Gov't's Resp. at 9). In 2013, the Government received a letter "from Croatian authorities indicating that the weapon was no longer in their possession, and that they did not have records indicating whether, and where, it may have been sent. The weapon was never in the United States to anyone's knowledge." (Tr. at 32).

The Court understands Jakisa's prejudice argument regarding the firearm to be that because the parties have been unable to locate the firearm, he is now without the opportunity "to inspect the weapon to rebut the idea . . . that it is the murder weapon." (*Id.* at 36). The Court concludes, however, that this allegation of prejudice falls short of the actual prejudice required in the context of preindictment delay. Just as the lost opportunity to interview a now deceased witness or to evaluate a lost document is not enough, standing alone, to demonstrate actual prejudice, the lost opportunity to examine the firearm does not, by itself, demonstrate actual prejudice. *See Bartlett*, 794 F.2d at 1290 ("The defendant . . . must relate the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit a court to assess accurately whether the information is

13

material to the accused's defense."). Jakisa suggests that his inspection of the firearm may allow him to rebut a claim that it was the firearm used to kill Elezovic. *See* (Tr. at 36). But Jakisa has not provided the Court with any information that suggests it is likely or even probable that the inspection would offer any rebuttal evidence, nor has he "specifically stated what the [inspection] would show."[9] *See United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) (concluding that defendant failed to establish actual prejudice despite defendant's allegations that "he lost access to his credit card records, which could have explained his location at the time of the killing" because the defendant did not "specifically state what the credit card records would show"). Jakisa has therefore failed to demonstrate actual and substantial prejudice based on the loss of the firearm.

---

[9]  At the hearing on the Motion to Dismiss, Jakisa stated that based on reports disclosed by the Government, "[a]n officer who responded to the scene of the murder indicated that he believed the weapon was an AK-47 manufactured by a Serbian company" and that the 1995 forensic report from Croatian authorities "indicates . . . the AK-47 is of Chinese manufacture." (Tr. at 36). Jakisa's argument is unclear, but he seemed to suggest the possibility of "two separate weapons" because it is "just common sense—or—common knowledge that the AK-47 is a common weapon." (*Id.*). Jakisa has not offered any testimony, report, or other evidence to support this argument and has not discussed this theory in any of his briefing, either before or after the motion hearing. The Court cannot conclude, based solely on Jakisa's assertions at the motion hearing, that because one of the responding officers believed the firearm was of Serbian manufacture and the forensic report indicated that the firearm was of Chinese manufacture, there were two separate weapons involved or tested, nor do these same facts otherwise demonstrate that Jakisa's own examination of the firearm would be material to his defense. The Court has no information regarding the responding officer's training and experience or the basis for his belief that the gun was manufactured by a Serbian company, and it is entirely reasonable that the officer's belief was simply not borne out upon forensic examination. Moreover, Jakisa does not explain, and the Court cannot discern based on the information (or lack thereof) now before it, how the location of the firearm's manufacture is relevant to whether the firearm is or is not credibly linked to the Elezovic murder.

### b. Overarching Issues with Jakisa's Allegations of Prejudice

In addition to the specific deficits in Jakisa's claims of prejudice based on the loss of witnesses and the loss of the firearm as discussed above, there are two matters that more broadly undermine Jakisa's claims of prejudice.

The first matter relates to the nature and degree of prejudice in this case and the Court's ability to fairly analyze prejudice at this point in time. To warrant dismissal of an indictment on due process grounds, Jakisa "must show that he has been 'actually and **substantially** prejudiced' by the delay." *United States v. Grap*, 368 F.3d 824, 829 (8th Cir. 2004) (emphasis added) (quoting *McDougal*, 133 F.3d at 1113); *see also Jackson*, 446 F.3d at 851 (noting that "insubstantial" allegations of prejudice are insufficient). And as noted, "an assessment of the nature and degree of the prejudice resulting from the missing evidence must be made in light of the overall strength of the government's case." *Benshop*, 138 F.3d at 1234.

Although the Court does not, at this pre-trial stage, have before it a preview of the Government's case against Jakisa, Jakisa's specific allegations of prejudice—the loss of the officer's competent testimony, the loss of MG's testimony, and the loss of the firearm—all relate to Jakisa's expectation that the Government will seek to prove at trial that Jakisa killed Elezovic. *See* (Mot. to Dismiss at 11–12). Jakisa's alleged commission of the Elezovic murder is but one of numerous matters that the Government alleges Jakisa failed to disclose when applying for refugee and legal permanent resident status and that appear to be the basis for the single count indictment in this case. *See* (Gov't's Resp. at 1) (asserting that, "[a]ccording to Bosnian court records," Jakisa was "arrested for or charged with" seven criminal offenses between 1990 and 1997, and asserting that Jakisa served in the HVO "[f]or various periods of time between 1991 and 1995"); *see also* (Indictment).

15

Given these other allegations against Jakisa, which are entirely unaffected by Jakisa's specific claims of prejudice, and given the pretrial nature of Jakisa's motion, it is unclear that the alleged limitations on Jakisa's ability to defend against an accusation that he killed Elezovic, "would . . . play[] a crucial role in the defense's efforts at refuting the Government's case against" Jakisa. *Cf. Sayer*, 2013 WL 627073, at *5 (finding actual and substantial prejudice when charges were based on single event of assault, case would involve circumstantial evidence and testimony of witnesses to the assault, and when "the only witness other than the victim and Defendant, who would have provided testimony corroborating Defendant's self-defense theory, . . . [was] unavailable"). Indeed, at this pre-trial stage, there is no certainty that the Government will attempt to prove that Jakisa killed Elezovic.[10] *See Crouch*, 84 F.3d at 1517 (discussing how even "a strong pretrial showing of substantial prejudice may ultimately dissolve in the unfolding of the actual trial itself" based on the thrust of the government's case); *see also* (Tr. at 20) (Jakisa's counsel stating that the Government "can prove" its case "in many ways as far as criminal history. There are multiple allegations; some of which resulted in convictions, some of which did not."). The Court declines to recommend the significant and final relief of dismissal of the Indictment when such uncertainties remain. *Cf. Bartlett*, 794 F.2d at 1290 ("[T]he defendant must demonstrate that the prejudice *actually* impaired his ability to meaningfully present a defense.").

The second broader issue with Jakisa's claims of prejudice relates to whether the loss of any witness or piece of evidence occurred during any period of delay that is properly imputed to

---

[10] This uncertainty was discussed at the hearing on the Motion to Dismiss. *See* (Tr. at 18) (Court noting that Jakisa's argument is "premised on the notion that the Government intends to actually prove the murder"; Jakisa's counsel responding: "That's correct, we'll see, but I'm also making motions, given what I have."); *see* (*id.* at 29) (Government's attorney stating that "to some degree the Government needs to figure out what is going to be the best evidence, the best way to prove its case").

the Government. *See Bartlett*, 794 F.2d at 1290 (stating that "a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government"). Perhaps with the exception of MG's testimony,[11] there is nothing in the record currently before the Court that demonstrates when the allegedly lost evidence became unavailable. That is, nothing in the record demonstrates when the officer alleged to now be suffering from mental illness became mentally ill, nor does the record demonstrate when the firearm was lost or perhaps destroyed. If the officer became mentally ill a short time after the Elezovic murder in 1993, "[a]ny testimony he might have given would have been lost regardless of the preindictment delay." *United States v. Stierwalt*, 16 F.3d 282, 285 (8th Cir. 1994) (involving missing witness that disappeared shortly after offense was committed); *see also Crouch*, 84 F.3d at 1518 (stating that deceased witnesses who "died at a wholly unspecified time before the indictment" may have died "prior to any delay having become even arguably undue, and hence their 'loss' could not be attributable to any improper delay"); *United States v. Savage*, 863 F.2d 595, 598 (8th Cir. 1988) (stating that defendant must prove actual and substantial prejudice "**flowing from** the preindictment delay" (emphasis added)).

In fact, on the record before the Court, it is possible that the alleged loss of evidence occurred before any period of preindictment delay whatsoever. Jakisa applied for refugee status in 1998, and applied and adjusted to legal permanent resident status beginning in 2001, obtaining his green card sometime thereafter. *See* (Gov't's Resp. at 2). Because the Elezovic murder is alleged to have occurred in 1993, it remains entirely possible that the responding officer's mental illness arose even before any of the conduct constituting the alleged offense in this matter—possession of an unlawfully obtained green card—occurred. Likewise, the firearm that the parties

---

[11] The parties speculate that MG may have been alive as late as 2007. (Gov't's Supplemental Resp. at 8); (Jakisa's Reply at 5).

have been unable to locate may well have been lost or destroyed relatively soon after the forensic examination in Croatia in 1995, and therefore may have been lost "regardless of the preindictment delay" or even before Jakisa committed the offense alleged in the Indictment. *Stierwalt*, 16 F.3d at 285; *see also Reed*, 647 F.2d at 852–53.

### c.     Conclusion

In sum, the Court concludes that on the present record, Jakisa has failed to meet his burden of showing actual and substantial prejudice flowing from the preindictment delay. *See Bartlett*, 794 F.2d at 1289–93. At this stage of the prosecution, Jakisa's allegations of prejudice are speculative and conclusory. "Conceivably, when the issues are fully tried, there may be additional evidence presented that [Jakisa] sustained actual and substantial prejudice as a result of the loss of the witnesses" or evidence. *Id.* at 1294; *see also Marion*, 404 U.S. at 326 ("Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.").

Because Jakisa has failed to establish actual and substantial prejudice, it is unnecessary for the Court to resolve the parties' dispute regarding the proper test to be applied in the post-prejudice analysis and determine whether that test has been satisfied in this case. *See United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002) ("If the defendant fails to establish actual prejudice, we need not assess the government's rationale for the delay."); *Benshop*, 138 F.3d at 1234 (stating that a "defendant's failure of proof on [the] issue [of prejudice] is a sufficient ground on which to deny a motion to dismiss"); *Savage,* 863 F.2d at 598 ("Only where actual prejudice has been established will the court inquire into the reasons for the delay . . . ."). The Court notes that the parties' disagreement with regard to the post-prejudice analysis is reflective

of both inconsistent authority within the Eighth Circuit[12] and a decades-long split among the circuit courts of appeals.[13] And while the Court has noted the possibility that events at trial may ultimately permit Jakisa to meet his burden to show actual and substantial prejudice, only if Jakisa makes such a showing will the Court be squarely presented with questions regarding the proper post-prejudice analysis. *See Lovasco*, 431 U.S. at 789 (noting that "proof of actual prejudice makes a due process claim concrete and ripe for adjudication").

For the reasons stated above, the Court recommends denying Jakisa's Motion to Dismiss without prejudice.

---

[12]   *Compare Jackson*, 446 F.3d at 849 ("In contrast to the balancing test used in Sixth Amendment cases, defendants claiming a due process violation for pre-indictment delay must carry the burden of proof on two separate elements. The defendant must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him.") *with United States v. Farber*, 679 F.2d 733, 734–35 (8th Cir. 1982) ("A defendant is entitled to dismissal of an indictment where he shows actual prejudice from an unreasonable delay on the part of the government. . . . Where actual prejudice is established, the reasons for the delay are balanced against the prejudice shown by the accused." (omission in original) (internal quotation marks omitted)); *see also Crouch*, 84 F.3d at 1512 n.15 (discussing inconsistencies in Eighth Circuit case law). The Government urges the Court to apply the stricter standard articulated in *Jackson*, while Jakisa urges the Court to follow the balancing approach in *Farber*. *E.g.*, (Gov't's Reply at 6); (Jakisa's Reply at 5–6). Jakisa further asserts that the burden to articulate the reasons for the delay is properly placed on the Government, and that if the Government's proffered reason for the delay demonstrates "'reckless disregard' of known circumstances [that] created an appreciable risk of impairing a defendant's ability to mount a defense," then recklessness may be sufficient to warrant dismissal of the indictment. (Jakisa's Supplemental Mem. at 12–13); *see also* (Jakisa's Reply at 6). Jakisa also appears to contend more broadly that the ultimate inquiry is whether, balancing the prejudice to the defendant against the government's stated reasons for the delay, "'the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency.'" (Jakisa's Supplemental Mem. at 13, 14) (quoting *Howell v. Barker*, 904 F.2d 889, 895 (4th Cir. 1990)) (omissions in *Howell*); *see also* (Jakisa's Reply at 6).

[13]   *Hoo v. United States*, 484 U.S. 1035 (1988) (White, J., dissenting) (discussing circuit split in dissent from denial of certiorari).

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Zdenko Jakisa's Motion to Dismiss Indictment of Time Barred Claims and for Pre-Indictment Delay [Doc. No. 24] be **DENIED without prejudice.**

Dated: March 11, 2015

*s/Steven E. Rau*
Steven E. Rau
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **March 25, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.